HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRUCE BANKS, individually,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Case No. C03-5533 RBL

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

The plaintiff brings this action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 2671 seeking damages for injuries he sustained during a surgical procedure performed at the Veterans Hospital in Seattle. He claims that the defendant's health care providers were negligent in performing the surgery, in obtaining his informed consent for the surgery and in providing post-operative follow-up. Plaintiff also alleges that the surgical technique employed by defendant's health care providers was investigational or experimental requiring prior review by the Institutional Review Board pursuant to 45 CFR 46.101.

Jurisdiction is vested in this Court by virtue of the Federal Tort Claims Act. The case was tried to the Court from May 9 to May 27, 2005. Based upon a preponderance of the credible evidence the Court now makes the following:

ORDER
Page - 1

# FINDINGS OF FACT

1. Bruce Banks is a 63 year old veteran of the Navy. In approximately 1998, Banks first received mental health counseling at the VA Hospital.

2. On July 13, 2000, Banks was voluntarily admitted to the VA Hospital at American Lake, He was experiencing visual and auditory hallucinations and suffering from major depression. He remained hospitalized until August 4, 2000.

3. On July 17, 2000, during his psychiatric inpatient admission at the VA Hospital, Banks' PSA, an indicator of prostate cancer, was found to be elevated at 13.5.

4. In October of 2000, plaintiff was diagnosed with major depression with psychotic features and bipolar disorder.

5. On October 27, 2000, Mr. Banks was examined by Dr. Claire Yang, attending Urologist, who found a distinct nodule in the right midprostate and extending toward the base. Dr. Yang ordered a needle biopsy.

6. On November 28, 2000, a prostate needle biopsy was performed by Dr. David Penson. Dr. Penson determined that Mr. Banks had cancer on both sides of his prostate with a nodule on the right side.

7. On December 12, 2000, Mr. Banks had an appointment with Dr. Penson to discuss his options for treatment of his prostate cancer. Mr. Banks had already researched his options on the internet. Dr. Penson talked a lot about laparoscopic prostatectomy. He told Mr. Banks that if his dad had prostate cancer, he'd recommend the laparoscopic prostatectomy. Mr. Banks signed the consent for surgery on December 12, 2000, and reconfirmed his consent on January 11, 2001, by signing the consent form. Mr. Banks was mentally competent to consent to surgery.

8. At no time prior to the surgery was Mr. Banks told by Dr. Penson that because he and his surgical team were relatively new to the procedure, the laparoscopic prostatectomy would take longer and that there was increased risk of injury because of the increased length of surgery. Banks would not have consented to this procedure had he known how long it was going to take and the associated risks.

9. The surgical procedure was performed on Mr. Banks on January 18, 2001, and lasted over eleven hours. Mr. Banks had previously been told by Dr. Penson, and had learned from his research, that the surgery would take several hours, but considerably less time than eleven hours. See Exh. 3 to the

Preservation Deposition of Dr. Daniel Brzusek, Trial Exh. 21.  Although the surgery was performed skillfully, because of the length of the surgery and the positioning of Mr. Banks' body during surgery, Banks suffered peripheral neuropraxias to both lower extremities and to his left arm.

10. On March 8, 2001, Mr. Banks underwent EMG testing at the VA.  The findings of this testing noted severe membrane instability in the bilateral peroneal nerves, right worse than left, absent right and left peroneal motor response at the ankle and across the knees, and absent left ulnar sensory response at the wrist with slow nerve conduction across the elbow.  The impression was severe bilateral common peroneal neuropathy secondary to compression across the knees, right worse than left, and mild left ulnar neuropathy secondary to compression across the elbow.

11. Mr. Banks' post-surgery neurologic condition is both painful and debilitating.

12. On November 3, 2004, Mr. Banks fell in his home, twisting his left leg, suffering a fracture of the proximal fibula and distal tibia.  On November 6, 2004, Banks underwent emergency surgery to repair fractures in his left leg.  This injury was a direct result of his peroneal nerve damage.

13. Mr. Banks' current neurologic symptoms suffered as a result of the surgery are permanent.

14. Although Dr. Penson and Dr. Porter were relatively new to the procedure, laparoscopic prostatectomy surgery was neither experimental nor investigative.

## **CONCLUSIONS OF LAW**

1. Federal Tort Claims Act actions are governed by the substantive law of the state in which the act or omission occurred.

2. In Washington, medical malpractice claims are governed by RCW 7.70.030.  The plaintiff has established by a preponderance of the credible evidence that he sustained permanent injury as a proximate result of health care to which he did not consent.

3. Mr. Banks has suffered no economic loss as a result of his injuries.  At the time of his surgery he was not employed and not employable.  His medical care was provided free of charge by the VA and his future medical care will be provided to him free of charge by the VA.

4. For his past and future pain and suffering, the sum of $750,000 is fair and reasonable compensation.

5. Mr. Banks' medical bills incurred as a result of his broken leg suffered on November 3, 2004 should be paid by the defendant immediately.

DATED this 6th day of June, 2005

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page - 4